UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___3/14/2022__
```

DERRICK PERKINS,

                              Plaintiff,

         -against-

ADA PRESLEY, WARDEN NYCDOCS,
CAPTAIN TUNSIL, FOOD SERVICE SUP,
NYCDOCS, CAPTAIN LUE, NYCDOCS,
CAPTAIN KELLER, NYCDOCS,
CORRECTION OFFICER LANI,
NYCDOCS, DAVID VILABREA, MEDICAL
DOCTOR, NYCDOCS, CORRECTON
OFFICER TORRES, NYC DOCS, CAPTAIN
VAZQUEZ, NYCDOCS,

                              Defendants.

1:18-cv-03590-MKV

OPINION AND ORDER

MARY KAY VYSKOCIL, United States District Judge:

        Incarcerated Plaintiff Derrick Perkins, proceeding *pro se* and *in forma pauperis*, brings

this action against Warden Ada Presley, Captain Kimberlyn Tunsil, Captain Christopher Lue,

Captain Gigi Keller, Correction Officer Deepnoor Lali,[1] Doctor David Vilabrea, Correction

Officer Joey Torres, and Captain Eddie Vazquez, (collectively, "Defendants"), alleging various

constitutional violations that purportedly occurred while Plaintiff was detained at the Robert N.

Davoren Complex ("RNDC") on Rikers Island.  Liberally construing the Complaint, Plaintiff

brings seven causes of action: (1) a deprivation of adequate medical care claim against Dr.

Vilabrea; (2) an unconstitutional conditions of confinement claim against Captain Keller,

Captain, Lue, and C.O. Lali; (3) an inadequate investigation claim against Captain Keller,

---

[1] Plaintiff's Complaint named "Correction Officer Lani" as a defendant in this action.  (Compl. [ECF No. 2]).  On July 20, 2018, New York City Department of Correction ("DOC") advised the Court that it was unable to identify "Correction Officer Lani" because it was unable to match the name and shield number to a DOC employee.  [ECF No. 12].  After Plaintiff provided more detail of "Correction Officer Lani," DOC was able to identify Deepnoor Lali as the named defendant.  [ECF No. 22].

Captain, Lue, and C.O. Lali; (4) a negligence claim against Captain Tunsil; (5) a First

Amendment retaliation claim against all Defendants; (6) a conspiracy claim against all

Defendants; and (7) a supervisory liability claim against Warden Presley and Captain Tunsil.

Discovery has closed [ECF No. 82][2] and Defendants have moved for summary

judgment.[3] (Notice of Motion [ECF No. 94]). In support of their motion, Defendants filed a

memorandum of law (Def. Br. [ECF No. 94-4]), a Notice to Pro Se Litigant Who Opposes a

Motion for Summary Judgment (Notice Pro Se Litigant [ECF No. 94-1]), a Declaration of Brian

Zapert, counsel for Defendants, with several exhibits ("Zapert Decl." [ECF No. 94-2]), and a

Local Civil Rule 56.1 Statement (Def. 56.1 [ECF No. 94-3]). In opposition to Defendants'

motion, Plaintiff filed a Rule 56.1 Counter-Statement. (Pl. 56.1 Response [ECF No. 95]).

Defendants filed a Rule 56.1 Reply Statement. (Def. 56.1 Reply [ECF No. 96]).[4]

---

[2] In an order memorializing rulings made at the Post-Discovery conference, the Court directed Defendants to produce and mail to Plaintiff (1) identifying information of other inmates and (2) the video footage preservation policy of the correctional facility. [ECF No. 82]. This information was subsequently provided to Plaintiff. [ECF No. 87]. As such, discovery is closed in this case.

[3] The Court previously denied Defendants' Motion for Summary Judgment without prejudice for failure to comply with Local Civil Rule 56.2. [ECF No. 93]. That Rule requires a represented party moving for summary judgment against a *pro se* party to serve and file a Notice To *Pro Se* Litigant Who Opposes a Motion For Summary Judgment with the full texts of Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1. Local Civ. R. 56.2. In their original Motion for Summary Judgment, Defendants failed to include the full texts of the Federal Rule of Civil Producedure 56 and Local Civil Rule 56.1. [ECF No. 93]. After carefully reviewing the Notice To *Pro Se* Litigant Who Opposes a Motion For Summary Judgment that Defendants filed with their renewed Motion for Summary Judgment, the Court is satisfied that Defendants are now in compliance with Local Civil Rule 56.2.

[4] Plaintiff's 56.1 Counter-Statement did not comply with Local Rule 56.1(b) in that Plaintiff did not include "correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party." (*See* Pl. 56.1 Response). Moreover, it appears that Plaintiff's 56.1 Counter-Statement was not scanned properly and portions of the statement have been cut-off. (*See* Pl. 56.1 Response). However, it appears that the version of Plaintiff's 56.1 Counter-Statement served on Defendants was not cut-off and Defendants were able to sequentially align Plaintiff's 56.1 Counter-Statement with Defendants' 56.1 Statement in Defendants' Rule 56.1 Reply Statement. (*See* Def. 56.1 Reply). As such, the Court ordered Defendants to file on ECF a copy of Plaintiff's Rule 56.1 Counter-Statement that had been served on them. [ECF No. 99]. Defendants subsequently filed that copy of Plaintiff's Rule 56.1 Counter-Statement. [ECF No. 100]. After carefully reviewing the copies of Plaintiff's 56.1 Counter-Statement filed by both Plaintiff and Defendants, the Court is satisfied that the copy of Plaintiff's 56.1 Counter-Statement filed by Defendants, [ECF No. 100], is complete and accurate. The Court will cite to Defendant's Rule 56.1 Reply Statement, which contains the Defendants' assertions from their 56.1 Statement, Plaintiff's corresponding responses to those statements from his 56.1 Counter-Statement, and Defendants' corresponding replies to Plaintiff's responses. (*See* Def. 56.1 Reply).

For the following reasons, Defendants' Motion for Summary Judgment is granted.

## BACKGROUND

**I.   Factual Background**

**A.  Plaintiff's Initial Injury**

Plaintiff was a pre-trial detainee at the RNDC on Riker's Island from July 2, 2016 until sometime in or around December 19, 2019.  (Def. 56.1 Reply ¶¶ 1–2).  On January 9, 2018, at about 5:40 am, Plaintiff bit into an apple that had a razor blade hidden inside it.  (Def. 56.1 Reply ¶¶ 2–5).  Plaintiff approached C.O. Lali for medical help, (Def. 56.1 Reply ¶¶ 6–7), and C.O. Lali notified the medical clinic of Plaintiff's injury within three to five minutes, (Def. 56.1 Reply ¶ 10; Ex. Plaintiff's Deposition ("Perkins Tr.") [ECF No. 94-6] 13:20–14:3).  Plaintiff was taken to the medical clinic at around 7:00 am.  (Def. 56.1 Reply ¶ 12).

The parties disagree over how long Plaintiff's mouth bled from his injury.  The parties agree that Plaintiff's mouth initially bled "profusely," (Def. 56.1 Reply ¶ 11), but Defendants contend that the bleeding slowed down and stopped before Plaintiff was examined in the medical clinic, (Def. 56.1 Reply ¶ 11).  However, Plaintiff asserts that his mouth "bled profusely for a prolonged period after 5:40 am and 7:00 am and when seen by medical."  (Def. 56.1 Reply ¶ 11).

Once he arrived at the medical clinic, Plaintiff was examined by Dr. Vilabrea who recorded that plaintiff showed "no discernible injury and no active bleeding" and that no treatment was necessary.  (Def. 56.1 Reply ¶¶ 13–14, 16; Ex. Injury to Inmate Report ("Injury Report") [ECF No. 94-7], DEF000008–9).  During the visit, Dr. Vilabrea conferred by phone with Dr. Wachtel, another doctor from Urgent Care.  (Def. 56.1 Reply ¶ 15; Injury Report at DEF000008–9).  Plaintiff represents that Dr. Vilabrea refused to "suture the injury to [his] mouth" and that as a result, Plaintiff claims he now has "scar tissue" on the inside of his mouth.

(Def. 56.1 Reply ¶¶ 13–14).  He also asserts that Dr. Vilabrea "fabricated" his injury and minimized its seriousness.  (Def. 56.1 Reply ¶ 16).

After his medical visit, Plaintiff returned to his cell, but later that day requested further medical care.  (Def. 56.1 Reply ¶¶ 19–20).  Plaintiff was taken back to the medical clinic and was given an HIV test, which came back negative.  (Def. 56.1 Reply ¶¶ 21–23).

### B. Investigation Of The Razor Blade

Captain Lue was designated to investigate Plaintiff's injury from the razor blade.  (Def. 56.1 Reply ¶ 26).  He spoke with Plaintiff, reviewed surveillance video, and reviewed the incident report.  (Def. 56.1 Reply ¶ 26).  Upon reviewing video surveillance footage, Captain Lue concluded that Plaintiff had been touching and manipulating his mouth before biting into the apple and that Plaintiff threw the apple at C.O. Lali.  (Def. 56.1 Reply ¶ 29).

Based on this, on January 9, 2018, Plaintiff was infracted for possession of contraband — the razor.  (Def. 56.1 Reply ¶ 31).  That same day, Plaintiff was moved to an isolation cell pending his adjudication hearing on the infraction.  (Def. 56.1 Reply ¶ 32).  That isolation cell did not have a working toilet or sink.  (Def. 56.1 Reply ¶ 33).  Plaintiff also claims that he was not able to shower.  (Def. 56.1 Reply ¶¶ 32, 35).  Plaintiff informed a captain in the area, whom he cannot identify, about the cell conditions.  (Def. 56.1 Reply ¶ 34; Perkins Tr. 26:14–21).

The day after he was moved to the isolation cell, Plaintiff filed a grievance regarding the razor incident.  (Def. 56.1 Reply ¶ 38).  That grievance was later dismissed because there was still an ongoing investigation into the incident.  (Def. 56.1 Reply ¶ 39).  Plaintiff did not file another grievance.  (Def. 56.1 Reply ¶ 40).

On January 12, 2018, the adjudication hearing was held before Captain Petty at which Plaintiff pled not guilty and gave his statement as to what happened on the morning of January 9,

2018.  (Def. 56.1 Reply ¶¶ 35–36).  On February 1, 2018, Captain Petty issued a written decision dismissing the infraction against Plaintiff.  (Def. 56.1 Reply ¶ 37).

### C.  Plaintiff's Cell Is Searched And He Is Infracted For Possession Of Contraband

On February 7, 2018, Plaintiff's cell was searched by DOC officers, including C.O. Torres.  (Def. 56.1 Reply ¶ 41).  C.O. Torres found two sharp pieces of metal in the radiator in Plaintiff's cell.  (Def. 56.1 Reply ¶ 42).  According to Defendants, Plaintiff had been moved into that cell about a week before it was searched.  (Def. 56.1 Reply ¶ 43).  However, Plaintiff represents that he was moved into that cell the same day it was searched.  (Def. 56.1 Reply ¶¶ 41–43).  He claims that Defendants did not inspect the cell before he moved into it because he did not receive a cell inspection report.  (Def. 56.1 Reply ¶ 44).  Defendants claim that Plaintiff never asked for the cell inspection report, but Plaintiff claims he did.  (Def. 56.1 Reply ¶ 45).

Plaintiff was infracted for the possession of contraband based on the metal found in his cell.  (Def. 56.1 Reply ¶ 46).  A hearing was held before Captain Vazquez on February 13, 2018.  (Def. 56.1 Reply ¶ 47).  Plaintiff was found guilty of possessing contraband and given a red identification status.  (Def. 56.1 Reply ¶ 48).  Plaintiff appealed this finding, (Def. 56.1 Reply ¶ 49), but never filed an Article 78 challenging the finding.  (Def. 56.1 Reply ¶ 50).  The outcome of the appeal is not in the record.

### D.  Defendants Warden Presley and Captain Tunsil

Warden Presley was the warden of RNDC at the time of the initial razor incident and subsequent infractions.  (Def. 56.1 Reply ¶ 51).  Captain Tunsil was the food supervisor at

RNDC at the time that Plaintiff was injured by the razor.  (Def. 56.1 Reply ¶ 56).  Plaintiff never directly interacted with either Warden Presley or Captain Tunsil.  (Def. 56.1 Reply ¶¶ 52, 57).

## LEGAL STANDARD

A party is entitled to summary judgment when there is no "genuine dispute as to any material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact.  *Celotex v. Catrett*, 477 U.S. 317, 322–23 (1986).  Once the motion for summary judgment is properly made, the burden shifts to the nonmoving party, which "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250.  The Court must view the record "in the light most favorable to the opposing party," *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (citation omitted), and must "resolve all ambiguities and draw all reasonable inferences against the movant," *Caronia v. Phillip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013) (citation omitted).

A party "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).  Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  To defeat a motion for summary judgment, the non-moving party must demonstrate more than "some metaphysical doubt as to the material facts."  M*atsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opponent "cannot defeat the motion by relying on the allegations in [its] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible."  *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir.

1996) (citation omitted).  "Mere conjecture or surmise by the nonmovant in support of his or her

case is inadequate."  *UMB Bank, N.A. v. Bluestone Coke, LLC*, No. 20-CV-2043 (LJL), 2020 WL

6712307, at *3 (S.D.N.Y. Nov. 16, 2020) (quoting *Am. Home Assurance Co. v. Jamaica*, 418 F.

Supp. 2d 537, 546 (S.D.N.Y. 2006)).

 *Pro se* parties are "to be given 'special latitude on summary judgment motions.'"  *Reyes

v. Koehler*, 815 F. Supp. 109, 112 (S.D.N.Y. 1993) (quoting *McDonald v. Doe*, 650 F. Supp.

858, 861 (S.D.N.Y. 1986)).  "Nevertheless, proceeding *pro se* does not otherwise relieve a

litigant from the usual requirements of summary judgment, and a *pro se* party's 'bald assertion,'

unsupported by evidence, is not sufficient to overcome a motion for summary judgment."  *Cole

v. Artuz*, 93 Civ. 5981, 1999 WL 983876 at *3 (S.D.N.Y. Oct. 28, 1999) (citing cases).

## DISCUSSION

 Section 1983 allows an individual to bring suit against persons who, acting under color of

state law, have caused him to be "depriv[ed] of any rights, privileges, or immunities secured by

the Constitution and laws of the United States."  42 U.S.C. § 1983; *see also West v. Atkins*, 487

U.S. 42, 48 (1988).  The Court liberally construes the Complaint in this case as alleging

constitutional violations, under 42 U.S.C. § 1983, arising out of the medical treatment Plaintiff

received after he cut his mouth on the razor blade in the apple, the conditions of his confinement

while he was held in the isolation cell, and the infraction he received after correction officers

found contraband in his cell.  (*See* Compl.).

### I. Plaintiff Fails To Establish A Claim For Deprivation Of Adequate Medical Care Against Dr. Vilabrea

 Plaintiff appears to allege that he was deprived of adequate medical care by Dr. Vilabrea

after he was cut by the razor.  (Compl. at 8).  Under the Eighth Amendment, prisoners are

constitutionally protected from "deliberate indifference to serious medical needs."  *Spavone v.*

*N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  A pretrial detainee's claim for deliberate indifference is evaluated under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).  To state a claim for deliberate indifference to serious medical needs, a pretrial detainee must satisfy a two-pronged test.  First, "the alleged deprivation of adequate medical care must be 'sufficiently serious.'"  *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 717 (S.D.N.Y. 2017) (quoting *Spavone*, 719 F.3d at 139).  Second, the defendant must act with a "sufficiently culpable state of mind."  *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).  The undisputed evidence establishes that Plaintiff cannot satisfy either prong of this test.

### A.  Plaintiff's Injury Was Not Sufficiently Serious

"The serious medical needs standard contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain."  *Charles v. Orange Cty.*, 925 F.3d 73, 86 (2d Cir. 2019).  Factors informing this analysis include "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'"  *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).  Moreover, "the actual medical consequences that flow from the alleged denial of care will be highly relevant."  *Smith v. Carpenter*, 316 F.3d 178, 187 (2d Cir. 2003).

The alleged deprivation of medical care for Plaintiff's injury was not serious enough to constitute a constitutional deprivation.  Plaintiff concedes that he was promptly taken to the medical clinic and seen by a medical professional.  (Def. 56.1 Reply ¶¶ 2–12).  Plaintiff's injury consisted of a cut to the inside of his mouth that had stopped bleeding by the time he had arrived

at the medical clinic.  (Def. 56.1 Reply ¶¶ 13–14, 16; Injury Report at DEF000008–9).  Plaintiff

admits that the only medical consequence of the alleged denial of care is that he now has "scar

tissue" on the inside of his mouth.  (Def. 56.1 Reply ¶¶ 13–14).  That is not sufficient to establish

a sufficiently serious medical need.  *See Wright v. Trapasso*, No. 15-CV-4428 (MKB), 2018 WL

4688940, *11 (E.D.N.Y. Sept. 28, 2018) (finding, in the context of excessive force, that being

sprayed with pepper spray was not a serious medical condition when plaintiff did not claim any

lasting physical injuries and plaintiff chose to forego medical treatment); *Young v. Choinski*, 15

F. Supp. 3d 172, 183 (D. Conn. 2014) (cuts and abrasions on plaintiff's arms failed to constitute

a "serious medical need" where he failed to allege that they "significantly interfered with his

daily activities or caused him substantial or chronic pain"); *Benitez v. Straley*, No.

01CIV.0181(RCC)(RLE), 2006 WL 5400078, at *12 (S.D.N.Y. Feb. 16, 2006) (cut on plaintiff's

lips, cut on plaintiff's head, and "severe cuts" to plaintiff's wrists-none of which required

stitches-did not constitute a medical condition that was sufficiently serious).

Plaintiff claims that his mouth was still bleeding at the time of his medical visit and that

Dr. Vilabrea refused to suture his mouth.  (Def. 56.1 Reply ¶¶ 11, 13–14).  However, the

undisputed evidence establishes that Dr. Vilabrea exercised reasonable medical judgment in his

treatment of Plaintiff and there is no record evidence to question or undermine that judgment.

Plaintiff's Rule 56.1 statement that Plaintiff's mouth was bleeding when he visited the medical

clinic is contradicted by his own deposition testimony in which he states under oath that by the

time he was seen by Dr. Vilabrea, the bleeding in his mouth "had dried up."  (Perkins Tr. 17:21–

18:3).  It is well settled that a party may not create a material issue of fact by disputing his own

prior sworn testimony.  *See Di Giovanna v. Beth Israel Med. Ctr.*, 651 F. Supp. 2d 193, 201

(S.D.N.Y. 2009); *see also Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005)

(holding that "a district court does not err where there is 'nothing in the record to support

plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony' and despite drawing all reasonable inferences in plaintiff's favor, 'no reasonable person could believe [plaintiff's] testimony'" (citation omitted)); *United Nat. Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351 (2d Cir. 1993) (party cannot create a material issue of fact on summary judgment by submitting an affidavit disputing his own prior sworn testimony).

Summary judgment is appropriate where, as here, medical records directly contradict Plaintiff's version of facts stated in his complaint and his Rule 56.1 Counter-Statement and where "the record is devoid of evidence of any kind supporting [plaintiff's] description of his injuries—other than his own claims." *Smith v. City of New York*, No. 1:18-CV-05079-MKV, 2021 WL 4267525, at *7 (S.D.N.Y. Sept. 20, 2021) (quoting *Davis v. Klein*, No. 11-CV-4868(ENV), 2013 WL 5780475, at *4 (E.D.N.Y. Oct. 25, 2013) (collecting cases). The medical records here, Dr. Vilabrea's injury report, conclude that plaintiff showed "no discernible injury and no active bleeding" and that no treatment was necessary. (Injury Report at DEF000008–9). As such, Plaintiff's uncorroborated statements to the contrary will not defeat Defendants' Motion for Summary Judgment.

### B. Plaintiff Cannot Establish That Dr. Vilabrea Acted With A Culpable State Of Mind

The second element of a deliberate indifference to serious medical needs claim requires proof that the defendant "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant[ ] knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. "[M]ere negligence" is not sufficient. *Id.* at 36. Moreover, a "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different

treatment does not give rise to a [constitutional] violation." *Chance*, 143 F.3d at 703.  Whether a defendant acts with a sufficient state of mind is assessed objectively.  *Darnell*, 849 F.3d at 35.

Here, Plaintiff cannot establish that Dr. Vilabrea acted intentionally to cause injury or recklessly failed to exercise reasonable care.  Instead, the record indicates that Dr. Vilabrea examined Plaintiff, conferred with another doctor, and determined that, in his own professional judgment, no treatment was necessary.  (Def. 56.1 Reply ¶¶ 13–15, 16; Injury Report at DEF000008–9).  This treatment was clearly reasonable given that, as Plaintiff admitted in his sworn testimony, the bleeding had stopped by the time Plaintiff reached the medical clinic. (Perkins Tr. 17:21–18:3).  That Dr. Vilbrea may have declined to suture Plaintiff's mouth (Def. 56.1 Reply ¶¶ 13–14) does not establish a constitutional violation.  *See Chance*, 143 F.3d at 703. At most, Plaintiff disagrees with the medical professionals over proper treatment.  That is insufficient to constitute a constitutional violation.  *See id.*

As such, there are no genuine disputes of material fact and Dr. Vilbrea is entitled to judgment as a matter of law on Plaintiff's deliberate indifference claim.

## II.   Plaintiff Fails To Establish An Unconstitutional Conditions Of Confinement Claim Against Captain Keller, Captain Lue, and C.O. Lali

Plaintiff appears to allege claims against Captain Keller, Captain Lue, and C.O. Lali for purported constitutional violations arising from his confinement in a cell without a working toilet or sink for about 72 hours.  (Compl. at 6–7).  "A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions."  *Darnell*, 849 F.3d at 29.  A plaintiff must satisfy two prongs to prove an unconstitutional conditions of confinement claim: (1) "an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute

objective deprivations of the right to due process," and (2) a "subjective prong" . . . showing that

the officer acted with at least deliberate indifference to the challenged conditions." *Id.*

### A. The Challenged Conditions Were Not Sufficiently Serious To Constitute Objective Deprivations Of The Right To Due Process

To establish an objective deprivation under both the Eighth and Fourteenth Amendments,

"the inmate must show that the conditions, either alone or in combination, pose an unreasonable

risk of serious damage to his health . . . which includes the risk of serious damage to physical and

mental soundness." *Id.* at 30 (internal quotation marks and citations omitted).  "There is no

'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions

themselves must be evaluated in light of contemporary standards of decency.'" *Id.* (quoting

*Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)).  "Unsanitary conditions, especially when

coupled with other mutually enforcing conditions, such as poor ventilation and lack of hygienic

items (in particular, toilet paper), can rise to the level of an objective deprivation." *Id.*

Defendants primarily argue that since Plaintiff was confined in unsanitary conditions for

a limited time, no constitutional deprivation arose.  (Def. Br. 12).  However, even putting aside

that Plaintiff claims to have been confined in a cell with no working toilet or sink for *three* days,

(Def. 56.1 Reply ¶¶ 32–33), Defendants cannot overcome Plaintiff's claim for unconstitutional

conditions of confinement solely on the ground that the conditions lasted only a limited period of

time.  *See Ortiz v. Dep't of Correction of City of New York*, No. 08 CIV. 2195 RJSHBP, 2011

WL 2638137, at *9 (S.D.N.Y. Apr. 29, 2011) (dismissing claim where plaintiff's exposure to

"sewage overflow" lasted less than 24 hours and collecting cases challenging unsanitary

conditions of confinement).  Defendants' argument was explicitly rejected by the Second Circuit

in *Darnell*.  There, a group of twenty individual plaintiffs alleged that they had been subjected to

unconstitutional conditions of confinement in a temporary holding facility where they had been

placed, at various times over an approximately two-year period, while awaiting arraignment. *Darnell*, 849 F.3d at 20.  However, none of the plaintiffs had been held for more than 24 hours. *Id.*  The district court granted summary judgment to the defendants, concluding, that, in light of the brevity of the plaintiffs' exposures to the claimed conditions and the fact that they could not "link any condition of confinement to any actual serious injury," the plaintiffs could not establish an objective constitutional deprivation.  *Id.* at 27.  The Second Circuit vacated that portion of the district court's decision, holding that "the plaintiffs ha[d] adduced substantial evidence . . . that they were subjected to appalling conditions of confinement" and that "the plaintiffs' claims should not have been dismissed on the grounds that the conditions in this case did not exceed ten to twenty-four hours, or result in serious injury."  *Id.* at 37.  *Darnell* clearly precludes Defendants' argument about the limited duration of the alleged conditions.

Nonetheless, Plaintiff's allegation that he was kept in a cell with no working toilet or sink for three days (Def. 56.1 Reply ¶¶ 32–33) is not sufficiently serious to constitute a constitutional claim.[5]  The Second Circuit has held that "unsanitary conditions lasting for mere days *may* constitute an Eighth Amendment violation."  *Walker v. Schult*, 717 F.3d 119, 127 (2d Cir. 2013) (emphasis added).  However, in cases in this Circuit where courts have held that the conditions of confinement amounted to a constitutional deprivation, the allegations were considerably more serious than here.  *See Gaston v. Coughlin*, 249 F.3d 156, 165 (2d Cir. 2001) (inmate stated an Eighth Amendment claim where inmate alleged that his cell was infested with mice and the area in front of his cell "was filled with human feces, urine, and sewage water" for several

---

[5] Plaintiff also alleges in his Rule 56.1 Counter-Statement that he could not shower during this time.  (Def. 56.1 Reply ¶ 32).  However, Plaintiff never alleged that he was denied a shower in his Complaint.  (Compl. at 3).  "[I]t is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment."  *Bonnie & Co. Fashions v. Bankers Tr. Co.*, 170 F.R.D. 111, 119 (S.D.N.Y. 1997); *see also De La Rosa v. City of New York Police Dep't*, No. 09 CIV. 5290 SAS, 2010 WL 4177626, at *8 (S.D.N.Y. Oct. 22, 2010), *aff'd*, 461 F. App'x 73 (2d Cir. 2012).  As such, the Court does not consider this Rule 56.1 statement in analyzing Plaintiff's unconstitutional conditions of confinement claim.

consecutive days); *Willey v. Kirkpatrick*, 801 F.3d 51, 55, 58, 66 (2d Cir. 2015) (reversing the dismissal of a plaintiff's claims where he was placed "in solitary confinement with a Plexiglas shield restricting the airflow to his small cell" and his toilet was incapacitated "so that he was reduced to breathing a miasma of his own accumulating waste," and then later placed "in an observation cell whose walls and mattress were smeared with feces and stained with urine," where he "remained naked . . . for 14 days"); *Darnell*, 849 F.3d at 32 (concluding that plaintiffs had adduced substantial evidence of "appalling conditions of confinement" where they established that they had been held in cells that (1) were so overcrowded that plaintiffs had no room to stand; (2) had no usable toilets; (3) had "feces, maggots, urine, vomit, and rotten milk" smeared on the floor and walls; and (4) were infested with "rats, mice, cockroaches, flies, and other insects and vermin"); *Wright v. McMann*, 387 F.2d 519, 522, 526 (2d Cir. 1967) (placement of prisoner for thirty-three days in cell that was "fetid and reeking from the stench of the bodily wastes of previous occupants which . . . covered the floor, the sink, and the toilet," combined with other conditions, would violate the Eighth Amendment).  Though these cases do not purport to establish a floor level of unsanitariness that would constitute a constitutional deprivation, the Court has not identified any cases with a similar fact pattern to here where a constitutional deprivation was found.  Nonetheless, even if Plaintiff had shown a constitutional deprivation in the conditions of his confinement, his claim still fails on the second prong of an unconstitutional conditions of confinement claim.

### B.  Plaintiff Has Not Established That Any Of The Named Defendants Acted With At Least Deliberate Indifference

Even if the conditions of Plaintiffs confinement amounted to a constitutional deprivation, he clearly cannot establish that any named Defendant acted with at least deliberate indifference to the challenged conditions.  To establish that Defendants acted with deliberate indifference,

Plaintiff must prove that Defendants "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. Mere negligence is insufficient. *Id.* at 36.

Plaintiff's claim fails here because there is no evidence that any of the named Defendants knew of or should have known of the conditions in Plaintiff's cell. Plaintiff claims in his Rule 56.1 Counter-Statement that he "informed the defendant's" that his cell was not livable. (Def. 56.1 Reply ¶ 34). However, this is contradicted by his own sworn testimony in which he stated that he told "the captain" about the conditions in his cell, but that he did not know the identity of the captain to whom he spoke. (Perkins Tr. 26:11–21). A party may not create a material issue of fact by disputing his own prior sworn testimony. *See Di Giovanna*, 651 F. Supp. 2d at 201. There is simply no evidence that any of the named Defendants knew that the toilet or sink in Plaintiff's cell was broken, much less acted intentionally or recklessly to impose the condition or failed to take reasonable steps to remedy those conditions.

Therefore, Defendants are entitled to judgment as a matter of law on Plaintiff's claim that the conditions of his confinement were unconstitutional.

### III.    Plaintiff Has No Constitutional Right To An Adequate Investigation

Plaintiff also seems to raise a claim that Captain Lue, Captain Keller, and C.O. Lali inadequately investigated how the razor blade got into his apple. (Compl. 6–7). However, generally, "there is no constitutional right to an adequate investigation." *Buari v. City of New York*, 530 F. Supp. 3d 356, 389 (S.D.N.Y. 2021) (quoting *Newton v. City of New York*, 566 F. Supp. 2d 256, 278 (S.D.N.Y. 2008)); *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 633 (E.D.N.Y. 2017) ("Courts have explained that failure to pursue a particular investigative path

does not give rise to an independent due process claim apart from claims of false arrest, malicious prosecution, or violation of right to a fair trial.") (collecting cases); *Head v. Ebert*, No. 14-CV-6546W, 2017 WL 3017395, at *2 (W.D.N.Y. July 11, 2017) ("[I]t is well-settled that 'there is no constitutional right to an investigation by government officials at all.'" (quoting *Burroughs v. Petrone*, No. 915CV0818DNHATB, 2016 WL 5376371, at *9 n.13 (N.D.N.Y. July 15, 2016), *report and recommendation adopted*, No. 915CV0818DNHATB, 2016 WL 5374126 (N.D.N.Y. Sept. 26, 2016)).  Moreover, the undisputed evidence establishes that Captain Lue did conduct an investigation of the incident.  (Def. 56.1 Reply ¶¶ 26, 29).  That Plaintiff may have disagreed with the outcome of that investigation does not rise to a constitutional deprivation.

## IV.   Plaintiff Cannot Pursue A Negligence Claim Under Section 1983

Plaintiff also appears to be alleging a negligence claim against Captain Tunsil based on her alleged failure to properly inspect the apple containing the razor.  (Compl. at 5).  However, section 1983 does create a general federal tort law.  *See Paul v. Davis*, 424 U.S. 693, 701 (1976); *Davidson v. Cannon*, 474 U.S. 344, 347 (1986) ("[W]here a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required."); *see also Ella v. Jackson*, No. 95 CIV. 2314 (AGS), 1996 WL 673819, at *3 (S.D.N.Y. Nov. 20, 1996), *aff'd*, 216 F.3d 1071 (2d Cir. 2000) ("Section 1983 does not elevate every common law tort to a constitutional violation.").

Even if Plaintiff could make a claim for negligence under section 1983, Plaintiff cannot establish any facts that Captain Tunsil breached any duty to Plaintiff.  Plaintiff testified that he never directly interacted with Captain Tunsil.  (Perkins Tr. 41:16–18).  Plaintiff alleged that she was negligent simply because she was in charge of the food at RNDC and there was a razor in Plaintiff's apple.  (Perkins Tr. 41:16–42:1).  However, vicarious liability is inapplicable to section 1983 suits.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

As such, Captain Tunsil is entitled to summary judgment on Plaintiff's negligence claim.

### V. Plaintiff Cannot Establish A First Amendment Retaliation Claim Against Any Of The Defendants

Plaintiff appears to also claim that he was retaliated against by all Defendants for exercising his First Amendment rights. (Compl. at 5–9). To prove a First Amendment retaliation claim under Section 1983, a prisoner must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)). Courts must approach prisoner claims of retaliation "with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), o*verruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002).

Plaintiff seems to claim that his protected speech here was the grievance he filed reporting his injury from the razor blade in the apple. (Compl. at 5–9). Plaintiff seems to also claim that there were two adverse actions taken against him: (1) that officers placed him in an isolation cell for 72 hours without a working toilet or sink; and (2) that officers later placed him in a cell with contraband to frame him for its possession. (Compl. at 5–9). Here, Plaintiff clearly fails to establish a causal connection between his alleged protected speech and the alleged adverse action.

### A. There Was No Causal Connection Between Plaintiff's Grievance And His Confinement In The Isolation Cell

There was clearly no connection between Plaintiff's grievance and his confinement to the isolation cell since he filed the grievance on January 10, 2018, (Def. 56.1 Reply ¶ 38), which was after he was placed in the isolation cell, (Def. 56.1 Reply ¶ 32). A retaliation claim cannot survive summary judgment where the undisputed facts establish that the alleged adverse actions

came *before* the alleged protected speech.  *See Zherka v. Bogdanos*, 411 F. App'x 440, 441 (2d Cir. 2011) (section 1983 First Amendment Retaliation claim dismissed where evidence indicated that a purportedly retaliatory investigation was under way before the protected speech at issue); *Harper v. The City of New York*, No. 10 CIV.7856 SAS, 2011 WL 3463156, at *7 (S.D.N.Y. Aug. 5, 2011) ("Because the alleged retaliation occurred before plaintiff engaged in the alleged protected activity, plaintiff's retaliation claim must be dismissed.").  As such, Plaintiff's claim of First Amendment Retaliation with respect to his confinement in the isolation cell cannot succeed and Defendants are entitled to judgment as a matter of law.

### B.  There Is No Evidence Of A Causal Connection Between Plaintiff's Grievance And The Search Of His Cell

To the extent that Plaintiff claims he was retaliated against with respect to the search of his cell and the infraction he received for having contraband in his cell, Plaintiff does not set forth any evidence that either C.O. Torres or Captain Vazquez planted contraband in Plaintiff's cell or acted to retaliate against Plaintiff.

As for C.O. Torres, there is no evidence that he planted any contraband in Plaintiff's cell. (Def. 56.1 Reply ¶¶ 41–42, 44).  Plaintiff merely alleges in conclusory charges that the contraband was planted in his cell, (Def. 56.1 Reply ¶ 44), which is insufficient to withstand summary judgment.  *See Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (requiring that any prisoner retaliation claim be "supported by specific and detailed factual allegations, not stated in wholly conclusory terms" (internal quotation marks and citation omitted)).  Moreover, to the extent that Plaintiff testified that the contraband was planted, (Perkins Tr. 35:18–36:14), he has no personal knowledge of any facts to support those allegations and his testimony is purely speculative.  *See Hicks*, 593 F.3d at 166 (a party "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment").

As for Captain Vazquez, there is no evidence that he was even aware of Plaintiff's prior grievance and there are similarly no allegations of any action by Captain Vazquez to plant contraband.  As such, there is no evidence to establish that Captain Vazquez acted with any retaliatory motive.  *See Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) ("Specific proof of improper motivation is required in order for plaintiff to survive summary judgment on a First Amendment retaliation claim." (citing *Blue v. Koren*, 72 F.3d 1075, 1082–83 (2d Cir. 1995)).  Plaintiff's claim of First Amendment Retaliation with respect to his infraction for possession of contraband cannot succeed and Defendants are entitled to judgment as a matter of law.

## VI.    Plaintiff Fails To Establish A Conspiracy Claim Against All Defendants

Plaintiff also appears to allege that all the Defendants conspired to deprive him of his constitutional rights based on the same assertions he made in regard to his retaliation claim. (Compl. 5–9).  To establish a section 1983 conspiracy claim, a plaintiff must prove "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir.1999).  Where there is no underlying constitutional violation, a section 1983 conspiracy claim fails as a matter of law. *See Curley*, 268 F.3d at 72.

As a preliminary matter, for the reasons previously discussed, Plaintiff cannot establish any underlying constitutional violation on the undisputed facts and so cannot make out a section 1983 conspiracy claim.  *See id.*  However, even if Plaintiff had demonstrated a dispute of fact to preclude summary judgment on any of his underlying constitutional deprivation claims, Plaintiff has no evidence of any agreement between or among Defendants to deprive Plaintiff of his constitutional rights.  "A § 1983 conspiracy claim based on conclusory allegations and unsubstantiated statements may not withstand a summary judgment motion where 'the record is

devoid of any proof of an agreement among Defendants to act in concert to violate Plaintiff['s] constitutional rights.'" *Mitchell v. Cty. of Nassau*, 786 F. Supp. 2d 545, 564 (E.D.N.Y. 2011) (quoting *Rose v. Julliano*, No. 05-CV-02732 (SJF), 2008 WL 5233178, at *7 (E.D.N.Y. Dec. 8, 2008)); *Pulizotto v. McMahon*, 406 F. Supp. 3d 277, 293 (S.D.N.Y. 2019) ("[P]laintiff must still allege facts beyond 'conclusory, vague, or general allegations' to assert the existence of an agreement to inflict constitutional injury."). Plaintiff's allegations of a conspiracy among Defendants to deprive him of his constitutional rights are entirely conclusory and unsubstantiated.

Moreover, Plaintiff's section 1983 conspiracy claim is barred by the intra-corporate conspiracy doctrine, which provides that "officers, agents and employees of a single corporate entity are legally incapable of conspiring together." *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 388 (S.D.N.Y. 2013) (quoting *Hartline v. Gallo*, 546 F.3d 95, 99 n.3 (2d Cir. 2008)). The Second Circuit has not yet expressly held that this doctrine applies to section 1983 suits, but it has held that it applies to section 1985 suits. *See Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978). Nonetheless, district courts in this Circuit regularly apply the intra-corporate conspiracy doctrine to section 1983 suits. *See, e.g.*, *Rizk v. City of New York*, 462 F. Supp. 3d 203, 225 (E.D.N.Y. 2020) (collecting cases); *Crews v. Cty. of Nassau*, No. 06-CV-2610 JFB WDW, 2007 WL 4591325, at *12 (E.D.N.Y. Dec. 27, 2007) (dismissing a section 1983 conspiracy claim by reason of the intra-corporate conspiracy doctrine) (Bianco, J.); *Dowd v. DeMarco*, 314 F. Supp. 3d 576, 587 (S.D.N.Y. 2018) (applying doctrine to bar section 1983 conspiracy claim against members of the NYPD).

For the foregoing reasons, Plaintiff cannot establish a section 1983 conspiracy claim on this record and Defendants are entitled to judgment as a matter of law on Plaintiff's section 1983 conspiracy claim.

### VII.    Plaintiff Cannot Establish Supervisory Liability Against Warden Presley Or Captain Tunsil

Plaintiff also appears to assert a claim for supervisory liability under section 1983 against Warden Presley and Captain Tunsil.  (Compl. at 5).  "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F. 3d 133, 138 (2d Cir. 2013).  The Plaintiff must show that

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (italics and quotation marks omitted) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).  In the context of supervisory defendants, liability under section 1983 "depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*."  *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citing *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989)).  Mere "proof of 'linkage in the prison chain of command' is insufficient."  *Id.* (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)).  "[V]icarious liability is [also] inapplicable to . . . § 1983 suits, [and so] a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

There is no evidence that Warden Presley had any personal involvement in any of Plaintiff's alleged constitutional deprivations, either directly or in a supervisory capacity. Plaintiff merely asserts that Warden Presley was personally involved in all the alleged

constitutional violations because she "was the chief executive officer of the RNDC facility, and had command of officers throughout the facility."  (Def. 56.1 Reply ¶¶ 52, 54; Perkins Tr. 39:25–40:13, 40:22–41:15).  However, a "defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because [she] held a high position of authority." *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (quoting *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996)).  Plaintiff has alleged no facts to establish that Warden Presley was *personally* involved in any constitutional violation.  Therefore, Warden Presley is entitled to judgment as a matter of law

There is also no evidence that Captain Tunsil had any personal involvement in any of the alleged constitutional violations.  Plaintiff merely states that Captain Tunsil "was the Captain in charge of the food wagons delivered to the housing unit 4 lower south and failed to inspect the delivered food items on the food wagon which resulted in plaintiffs injury."  (Def. 56.1 Reply ¶ 57).  However, vicarious liability is inapplicable to section 1983 suits.  *Iqbal*, 556 U.S. at 676. Plaintiff concedes that he never interacted directly with Captain Tunsil.  (Perkins Tr. 41:16–18). Plaintiff is therefore unable to establish that Captain Tunsil was personally involved in any alleged constitutional violations and Captain Tunsil is entitled to judgment as a matter of law.

## CONCLUSION

The Court, having liberally construed Plaintiff's Complaint, can find no set of facts establishing that Plaintiff's constitutional rights were deprived by the named Defendants.  As such, Defendants' Motion for Summary Judgment is GRANTED and this case is dismissed.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal.  *Cf. Coppedge v. United States*, 369 U.S. 438, 444–45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of Court is respectfully requested to close docket entry 94 and to close this

case.

The Clerk of Court is also respectfully requested to mail a copy of this Order to the *pro se*

Plaintiff at the address of record.


**SO ORDERED.**

**Date:  March 14, 2022**                                 **MARY KAY VYSKOCIL**
**New York, NY**                                          **United States District Judge**